IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LESLIE GLADSTONE, AS TRUSTEE OF WILLIAM G. TADLOCK, INC. BANKRUPTCY ESTATE, | ) | |
| Plaintiff, | ) | 04-1144C (Senior Judge Eric G. Bruggink) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

JOINT PRELIMINARY STATUS REPORT

Pursuant to Rule 16 and Appendix A, paragraph III, 4, of the Rules of this Court ("RCFC"), the parties file the following joint preliminary status report:

(a) Jurisdiction

Plaintiff's action arises pursuant to an express contract between Tadlock Construction Company and the United States, through the Department of the Navy. The action is brought by Leslie Gladstone, as Trustee of William G. Tadlock, Inc. Bankruptcy Estate ("Gladstone"), on an appeal from a final decision of the contracting officer . Plaintiff states that this Court has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 609. Defendant is currently not aware of any reason why this Court would not possess jurisdiction to entertain the merits of plaintiff's complaint.

(b) Consolidation

The parties do not believe that this case should be consolidated with any other case. Gladstone is plaintiff in Leslie Gladstone, as Trustee of William G. Tadlock, Inc. Bankruptcy Estate v. United States, 04-1145C. That case, however, concerns a different construction contract for a different project.

(c) Bifurcation

The parties are not aware of any reason why liability and damages should be tried separately.

(d) Deferral

The parties do not believe that further proceedings in this action should be delayed pending consideration of another case by this Court.

(e) Remand/Suspension

The parties do not intend to request remand or suspension.

(f) Joinder

The parties do not believe that additional parties should be joined.

(g) Dispositive Motions

While the parties agree that it is unlikely that dispositive motions will be filed, the parties request that on or before 30 days after the conclusion of discovery, they be allowed to file a status report regarding the appropriateness of filing dispositive motions.

(h) Relevant Issues

Plaintiff's Statement Regarding The Relevant Legal Issues

1.) Whether the government is estopped from contesting Tadlock's use of the "total cost" method of calculating damages at trial by reason of the government TCO's prior approval and acceptance of Tadlock's original settlement proposal calculated on the total cost basis.

2.) Whether the reasonable impracticability of proving Tadlock's damages at trial through the "inventory" method supports the presentation of those damages at trial through the "total cost" method.

3.) Whether the government is estopped to deny elements of Tadlock's damages claim that were agreed upon between the government's TCO and Tadlock.

4.) Whether the government can meet its burden of proof that Tadlock would have incurred a loss, had Tadlock completed the entire contract (F.A.R. 52.249.2(g)).

5.) Whether Tadlock is entitled to a profit adjustment.

6.) Whether the government terminated the subject construction contract in good faith.

7.) Whether the government's TCO abused his discretion in terminating the subject construction contract.

8.) Whether the government was negligent in submitting to Tadlock plans and specifications that failed to disclose problematic impediments to construction.

9.) Whether inadequate plans and specifications submitted by the government to Tadlock caused delays and increase in the scope of the construction project.

10.) Whether Tadlock was entitled to an equitable adjustment of the contract price due to the delays and incorrect scope of the construction project.

Discovery and investigation are ongoing and incomplete, and the Trustee reserves her right to assert additional legal issues in dispute, if and when determined.

Plaintiff's Statement Regarding The Relevant Factual Issues

This case arises from the government's termination for convenience of a contract between the government and William G. Tadlock,Inc. ("Tadlock") for the refurbishment of two enlisted personnel barracks at Camp Pendleton, California, identified as Building 22206 and Building 22207. At the time of the termination for convenience, Building 22206 was substantially

complete. However, work on Building 22207 had been delayed a total of twelve (12) months due to two separate cessations of work ordered by the Government: from October 7, 1996 through March 27, 1997 (on both Buildings) and August 7, 1997 through February 26, 1998 (on Building 22207).

1.) Whether the termination of the subject contract as accomplished was in the government's best interest.

2.) Whether the government's plans and specifications submitted to Tadlock prior to Tadlock's submission of its original bid failed to disclose problematic impediments to construction.

3.) Whether the failure of the government's plans and specifications to disclose problematic impediments to construction changed the scope and cost of the construction project.

4.) Whether the subject contract should have been deemed "completely terminated" upon the government's termination for convenience, given the circumstances.

5.) Whether the circumstances of the contract and Tadlock's performance support the factors set forth in F.A.R. 49.202(b)(1)-(9) mandating an allowance for profit.

6.) Whether the government's termination of the subject contract was the cause-in-fact of the purported "loss" alleged by the government to have been incurred as a result of a cost overrun in the completion of Building B-22206.

7.) Whether Tadlock incurred unpaid Direct Materials costs of $754,619.23, or some other amount, as a result of the government's termination for convenience of the subject contract.

8.) Whether Tadlock incurred unpaid Direct Labor costs of $588,592.44, or some other amount, as a result of the government's termination for convenience of the subject contract.

9.) Whether Tadlock incurred unpaid supervision and Contract Quality Control costs of $214,453.36, or some other amount, as a result of the government's termination for convenience of the subject contract.

10.) Whether Tadlock incurred unpaid Payroll costs (insurance and taxes) of $273,035.57, or some other amount, as a result of the government's termination for convenience of the subject contract.

11.) Whether Tadlock incurred unpaid adjusted Owned Equipment costs of $65,758.29, or some other amount, as a result of the government's termination for convenience of the subject contract.

12.) Whether Tadlock incurred unpaid subcontractor costs of $2,068,498.00, or some other amount, as a result of the government's termination for convenience of the subject contract.

13.) Whether Tadlock incurred Bond Premiums in the amount of $47,398.00, or some other amount, as a result of the government's termination for convenience of the subject contract.

14.) Whether Tadlock had received $3,944,914.00, or some other amount, in progress payments prior to its submission of its Termination Proposal.

15.) Whether Tadlock incurred unpaid Contractor's Termination Expenses of $15,822.33, or some other amount, as a result of the government's termination for convenience of the subject contract.

16.) Whether Tadlock incurred unpaid Subcontractors' Termination Expenses of $53,281.00, or some other amount, as a result of the government's termination for convenience of the subject contract.

17.) What percentage of its damages Tadlock can rightfully recover as a profit factor.

18.) What percentage of its damages Tadlock can rightfully recover as Home Office Overhead expense.

Discovery is ongoing and incomplete, and the Trustee reserves her right to address further disputed factual issues if and when they are discovered.

Defendant's Statement Regarding The Relevant Legal Issues

1.) Whether Gladstone's use of the total cost approach in a partial termination for convenience of a construction contract is appropriate. (See FAR 49.206(b))

2.) Whether the assessment of damages on an inventory basis in accordance with the FAR, that includes the costs of materials purchased in anticipation of completing the contract; settlement payments to subcontractors resulting from the TFC; and labor costs for work performed on the terminated portion of the contract, is appropriate. (See FAR 49.206(a))

3.) Whether a loss ratio must be applied to Gladstone's claim for damages. (See 49.203)

4.) Whether the damages sought by Gladstone are in accordance with the applicable cost principles and procedures referenced in FAR clauses 52.249-2(h) and FAR Part 31and Part 49, incorporated by reference into the contract.

Defendant's Statement of the Factual Issues

1.) Whether Gladstone is entitled to recover damages for work performed between the issuance of the August 7, 1997 partial suspension of work order for Building 22207 and the February 26, 1998 termination for convenience of all work on Building 22207.

2.) Whether Gladstone's proposal and supporting documentation adequately support, pursuant to the contract and the cost principles of FAR Part 31 and Part 49, the amount

sought.

3.) Whether the value of Gladstone's termination inventory on the terminated portion of the contract, pursuant to the contract and the cost principles of FAR Part 31and Part 49, amounts to the approximately $821,000 already paid to Gladstone.

4.) Whether the value of Gladstone's direct labor costs on the terminated portion of the contract, pursuant to the contract and the cost principles of FAR Part 31 and Part 49, amounts to the approximately $25,000 already paid to Gladstone.

5.) Whether the value of Gladstone's subcontractors' termination costs on the terminated portion of the contract, pursuant to the contract and the cost principles of FAR Part 31 and Part 49, amounts to approximately $61,600, of which $8,331 has already been paid.

6.) Whether, after accounting for all other reasonable, allocable and allowable costs pursuant to the contract and the cost principles of FAR Part 31 and Part 49, the value of Gladstone's remaining settlement costs amount to approximately $57,500.[1]

(i) Settlement

The parties are not currently in a position to pursue fruitful settlement discussions. The parties will, however, continue to consider the possibility of settlement, and the use of ADR, throughout the proceedings.

(j) Trial

At this time, the parties anticipate that they will proceed to trial and that the trial will last from five to ten days. The parties agree that an expedited trial pursuant to paragraph 6(b) of

---

[1] $72,475 of the adjusted amount has been paid. Interest of $5,349.50 and the home office allocation, that is, G&A, of $7,981.67 has not been included.

Appendix G is not warranted.

(k) Electronic Filing

The parties are not aware of any special issues regarding electronic case management needs.

(l) Additional Information

The parties request that the trial in this case take place in San Diego, California.

The parties are unaware of any other matters which should be brought to the Court's attention at this time.

Discovery Schedule

1. Exchange of documents by March 1, 2005

2. Completion of fact witness discovery by August 1, 2005

3. Designation of expert witnesses by January 15, 2005, and exchange of expert witness reports within 30 days of fact witness discovery being completed

4. Completion of expert witness discovery by December 1, 2005

5. Completion of all discovery by December 1, 2005.

Respectfully submitted,

PETER D. KIESLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

/s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

Attorneys for Defendant

Dated: December 21, 2004

/s Richard J. Annen, Esq.
RICHARD J. ANNEN, ESQ.
Sparber Rudolph Annen, APLC
701 B Street, Suite 1000
San Diego, CA 92101-8109
619-239-3600
619-239-5601 (Fax)

Attorney for Plaintiff

Dated: December 21, 2004

CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2004, a copy of the foregoing Joint Preliminary Status report was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

s/ Leslie Cayer Ohta